LOCKE & CO. v. CONCORD RAILROAD CORPORATION.

The published tariffs of s. 4, c. 2540, Laws 1861, are the tariffs posted in the depots of a railroad, as required by Laws 1852, c. 1277, s. 1.

ASSUMPSIT, to recover for money overpaid the defendants for freight on coal transported from Portsmouth to Concord.

The defendants have operated the Concord & Portsmouth Railroad since 1859. June 25, 1861, an act was passed by the legislature, empowering the Concord & Portsmouth Railroad to take up the rails between Candia and Suncook, and extend their road from Candia to Manchester, and connect with the defendants' road. The act provided that there should be no advance on the published freight and passenger tariffs as then established between Concord and Portsmouth. The evidence tended to show that in December, 1859, the defendants established the tariff on coal, in amounts of 20,000 pounds and upwards, between Concord and Portsmouth, at $2 per ton; that this tariff was posted in the depots and offices of the Concord & Portsmouth Railroad as required by law, and the defendants contended that if liable at all they were only liable for the freight paid by the plaintiffs in excess of $2 per ton. The plaintiffs contended that the tariff for freight on coal, as established June 25, 1861, was $1.50 per ton, and that the defendants were liable to refund to them the excess of freight paid above that amount; and, as tending to show this fact, they introduced evidence, subject to the defendants' exception, tending to show that between July, 1860, and January, 1861, coal in quantities exceeding 20,000 pounds was carried for certain persons at $1.50 per ton, together with the expense of transporting the coal, by teams, from the wharves in Portsmouth to the then existing terminus of the railroad, and loading the same upon the defendants' cars, which expense was from 23 to 41 cents per ton. The defendants claimed that in those instances special rates were made by order of the superintendent, and that there was no change in the tariff previously established and published. Subject to the plaintiffs' exception, and as tending to show that the tariff was not established at $1.50 per ton, the defendants were allowed to show that $2 per ton was charged in the fall of 1861, immediately after the passage of the act of June 25.

The court submitted the following questions to the jury—the first at the plaintiffs' request:

1. Was the tariff on coal from Portsmouth to Concord, on June 25, 1861, established by the defendants or their agents at $1.50 per ton?

2. If the tariff on coal from Portsmouth to Concord, on June 25, 1861, was established by the defendants or their agents at $1.50 per ton, was such tariff published at or prior to June 25, 1861?

The plaintiffs requested the court to instruct the jury that if they found that the defendants charged invariably all parties' having occasion to transport coal over their road between July 1, 1860, and January 1, 1861, from Portsmouth to Concord, $1.50 per ton, and no act on the part of the defendants after January 1, 1861, and before the passage of the act of June 25, 1861, appeared indicating any change on their part from that price, that relation of things was presumed by law to have continued, and the price of $1.50 per ton was presumed to have existed and continued until a different price was shown; and inasmuch as no different price was shown to have been paid or charged between July 1, 1860, and June 25, 1861, it was evidence that the price of $1.50 per ton was the established freight on coal between Portsmouth and Concord at the time of the passage of the act of June 25, 1861; that a tariff on freight might be established by the agents of the road; that the law required that the tariff should be the same for all persons for like descriptions of freight; that all special rates were illegal; and the presumption was, that between the 31st of July, 1860, and the 25th of June, 1861, the charges for freight on coal between Portsmouth and Concord were the same for all persons, and were those shown by the bills put in the case.

The court refused to give the instructions requested, except in so far as they are contained in those given, which were in substance as follows:

" The first question is, whether the defendants had established their tariff at $1.50 per ton on coal between Portsmouth and Concord. Established, as used in this connection, and as used in the act of June 25, 1861, means fixed, made firm, decreed by authority, ordained; that the defendants ordained or fixed by authority, or decreed, that the freight on coal between Portsmouth and Concord should be $1.50 per ton at that or some previous time. Was that the existing tariff at the passage of this act? It is not necessary that it should have been established by any set form of words, but it must have been done in a way that the public would understand that the tariff was established by the corporation or its agents at $1.50 per ton at that time. This might be done by the corporation, or their directors, superintendent, or master of transportation. It might be done by any agent or servant who had the superintendence and general charge of this particular business. In order to such establishment of the tariff, it must have been something more than fixing it in a particular instance, or for a single individual. It must have been a fixing for all persons alike,—not for special cases, but for all cases,—for the carrying of all that kind of freight. It would have been such an establishment of the rate if it was a fixed rate for everybody using the railroad under the same circumstances. If a rate was fixed only in special cases, or on particular occasions, or with particular persons, and it did not apply to everybody alike. it would not be a fixing or establishment

within the meaning of the statute. If you find on the evidence that the corporation, through its servants or agents, prior to June 25, 1861, had fixed $1.50 a ton as the rate for everybody who wanted coal transported from Portsmouth to Concord over their road, in quantities of 20,000 pounds or upwards, you will answer the first question in the affirmative. If you find on the evidence that such a rate was fixed only in special cases, or on particular occasions, or with particular persons, and did not apply to everybody alike, it would not be an establishment of a tariff within the meaning of the statute; and the question should be answered in the negative. The fact that they carried for particular persons at $1.50 per ton, is evidence for you to consider on the question whether the rate was established at $1.50 per ton."

To the instructions given no exception was taken, except to the definition of established; but the plaintiffs excepted to the refusal to give the instructions requested.

This action had been referred to an auditor, who found for the plaintiffs a small balance for payments in excess of $2 per ton; but on the question whether the plaintiffs were entitled to recover the amount overpaid by the plaintiffs.in excess of $1.50 per ton and under $2 per ton, the auditor found for the defendants, and in his report, by request, stated the facts appearing in the case. This report was put in evidence before the jury by the plaintiffs. Before the trial the plaintiffs agreed to the following, which was entered upon the docket in the case: "Plaintiffs consent that the auditor's report go to the jury as it is."

On this part of the case, the court instructed the jury that the auditor's report was evidence to be weighed by them with the other evidence in the case; that if there was no other evidence, the jury would be justified in returning a verdict in accordance with the report; but when there was other evidence, the jury should consider it in connection with the other evidence, and return such a verdict as was warranted by the whole evidence. The plaintiff claimed that the question whether the rate was established at $1.50 per ton was not passed upon by the auditor, and excepted to the instructions that the report was evidence on every question on which the right of the plaintiffs to recover depended.

There was evidence tending to show that since the passage of the act of June 25, 1861, the defendants had extended their railroad from its then terminus, a little less than one hundred rods, to the wharves in Portsmouth. The defendants requested the court to instruct the jury that they are entitled to charge a reasonable sum in addition to the tariff rate in force June 25, 1861, for such additional transportation over the extension. The defendants also requested the court to instruct the jury that a published and established tariff means the tariff posted as required by law; that the road has the right to charge less than the tariff rates, but not more, to all; that a verbal tariff cannot be established.

The court denied the requests, except in so far as they are contained in the instructions before recited, and the defendants excepted.

The jury having answered the first question in the negative, the court directed a general verdict for the plaintiffs for the balance found due by the auditor, being the amount charged by the defendants in excess of $2 per ton. No exception was taken to the instruction to the jury, that if they answered the first question in the negative they need not consider the second question. No objection was made that the second question was not answered, when the general verdict was taken.

The plaintiffs moved to set aside the verdict, and for a new trial. The defendants moved to set aside only that part of it by which they are charged for the excess over $2 per ton paid by the plaintiffs for transporting coal from Portsmouth to Concord, and for a new trial to that extent only. The motions were denied, and both parties excepted.

*Norris & Rand*, for the plaintiffs.

*Chase & Streeter, John Y. Mugridge*, and *John H. George*, for the defendants.

SMITH, J. By c. 1277, s. 1, Laws 1852, railroad corporations were required to establish from time to time, and cause to be posted up in their depots, the rates or tariffs of tolls between the several stations on their respective roads, and between such stations and the stations of other roads with which they had a joint business connection for the conveyance of freight and passengers; and the rates so established were required to be the same for all persons and for the like descriptions of freight between such stations. No rates of fare or freight could be advanced except on thirty days' notice established and posted as aforesaid.

By c. 2540, Laws 1861, the Concord & Portsmouth Railroad were authorized to change the location of their road so as to run from Candia to Manchester, and to take up their rails between Candia and Suncook. By s. 4 it was enacted that there should be no advance on the published freight and passenger tariffs as then established between Concord and Portsmouth and intermediate stations. This act was approved June 25, 1861, and took effect upon its passage.

A leading object of the act of 1852 was to compel the establishment of uniform rates for all persons entitled to transport their goods over a railroad. The common-law rule of equality was expressly reënacted. The posting of the established tariff in the depots of a railroad affords parties dealing with the road convenient facilities for ascertaining what are the established rates, and guards against mistakes and the exaction of illegal rates. The established rates so posted are the legal rates. Increased rates

cannot become legal until established and posted for thirty days. A tariff of lower rates may perhaps be established without being posted for a period of thirty days, but the statute imposes the duty of posting as often as the rates are changed.

The alteration of the charter and route in 1861 was accepted with the condition that there should be no increase of the published tariffs then established between Concord and Portsmouth. The published tariffs then established were those then posted in the depots of the railroad, as required by the law then in force.

The plaintiffs' claim is, not that they were charged more than the tariff rate when their coal was transported, but that the tariff rate was higher than that in force June 25, 1861. It is admitted that the defendants, in December, 1859, posted a tariff in their depots in which the rate for transporting coal from Portsmouth to Concord was established at $2 per ton; and it is further admitted, that that was the published and established rate from January, 1860, to July, 1860. No direct evidence was introduced that any tariff was posted prior to June 25, 1861, in which the rate on coal was less than $2 per ton. An examination of the testimony which has been made part of the case discloses no evidence of any such posting. This would seem to end the plaintiffs' case.

But the plaintiffs introduced evidence that the defendants transported coal between July, 1860, and January, 1861, at $1.50 per ton. The plaintiffs' contention is, that it was competent for the jury to find from this evidence that not only the established but the published rate was $1.50 per ton. The jury have found that no such tariff was established. If the verdict was found upon competent evidence, and under proper instructions, this too would seem to end the plaintiffs' case. The charge was sufficiently favorable to the plaintiffs. The other exceptions taken by them do not seem to be of sufficient force to require special discussion.

It does not appear that anything was claimed or paid for transportation over the extension of the road in Portsmouth, or that the excess above $2 per ton was for transportation by the defendants, or that any tariff for freight over that extension was established or posted.

*Exceptions overruled.*

STANLEY, J., did not sit: the others concurred.